JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1003 | DATE | 12/17/2003 |
| CASE TITLE | Cogwell vs. Smith | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment [45-1] is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| MF | courtroom deputy's initials |

DEC 18 2003

date mailed notice

51

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


**DOCKETED**
DEC 1 8 2003

DEMETRIUS COGWELL, )
)
    Plaintiff, )
)
v. ) No. 01 C 1003
)
DR. JOSEPH K. SMITH, DR. ANDREW TILDEN, ) Judge John W. Darrah
and DR. EVARISTO AGUINALDO, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Demetrius Cogwell, filed a suit against the Defendant, alleging a violation of his Eighth Amendment rights based on alleged deliberate indifferent treatment of his shin splints while at the Stateville Correctional Center. Presently before the Court is the Defendants' Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

In the instant case, Cogwell has not disputed any of the Defendants' statements of material

facts. Therefore, all the material facts averred by the Defendants are deemed admitted. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); L.R. 56.1(b)(3)(B). Even though Cogwell failed to respond to the Defendants' statement of material facts and such facts are deemed admitted, the Defendants' Motion for Summary Judgment will only be granted if the Defendants can demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Johnson v. Gudmundson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

Cogwell is an inmate with the Illinois Department of Corrections. On April 23, 1997, Cogwell was transferred to Stateville. (Def.'s 56.1(a)(3) Statement ¶ 1). While incarcerated at the Pontiac Correctional Center in December 1996, Cogwell underwent exploratory surgery on his lower-left leg to determine the cause of a mass. At that time, Cogwell informed his surgeon that he did not want conservative treatment for the mass and that he preferred exploratory surgery with a possible biopsy. Cogwell's surgeon incised Cogwell's lower-left leg over the area of the swelling, and the incision was carried down to the muscle groups in that area with the mass being carefully explored. No pathology was found in the mass, and the facia was reapproximated and the skin closed. (Id., at ¶ 2). In April 1997, during Cogwell's Transfer Reception Screening and intake medical evaluation at Stateville, Cogwell denied any chronic health problems and reported to the intake nurse that he felt "healthy." (Id., ¶ 4).

On September 21, 1997, Cogwell saw Dr. Joseph Smith during his admission to the prison infirmary. At that time, no ongoing medical problems were noted for Cogwell. (Def.'s 56.1(a)(3) Statement ¶ 5). Approximately two years later, on April 20, 1999, Cogwell complained about a limp on his left leg. A registered nurse assessed the lump as approximately the size of a "chin" on Cogwell's leg and referred Cogwell to see Dr. Smith. (Id., ¶ 5). On April 22, 1999, Dr. Smith

2

examined Cogwell for the complaint regarding his lower left leg. Dr. Smith examined Cogwell's legs, ankles, and feet. Dr. Smith's examination revealed the possibility of "subtle hyperflexation above both knee joints." Cogwell's longitudinal and plantar arches appeared normal. However, when Cogwell stood, his arches were not sufficient due to his narrow feet. Cogwell's pre-tibial surfaces were unremarkable. Dr. Smith recommended X-rays, a referral to the podiatrist, an orthopedic assessment; and he prescribed Tylenol as needed for thirty days. (Id., ¶ 6). That same day, Cogwell had X-rays completed on both of his knees. The radiologist found the X-rays negative for any abnormality. (Id., ¶ 7).

The next day, Dr. MacNab of the Podiatry Clinic saw Cogwell. Cogwell complained of left leg pain, pain in the lower extremity interior and deep posterior muscle group, and shin splints with left foot pronation. Dr. MacNab ordered an arch pad for the insole of Cogwell's shoe and ordered a follow-up exam in one month. This plan was reviewed and approved by Stateville's medical director, Dr. Willard Elyea. (Def.'s 56.1(a)(3) Statement ¶ 8).

On May 4, 1999, Cogwell was seen by Dr. Duffy in Stateville's Orthopedic Clinic due to Cogwell's history of shin splint pain. Dr. Duffy found that Cogwell could walk on his heals. However, Cogwell refused to walk on his toes. Dr. Duffy assessed that Cogwell was unable to "dorsal flex" his left leg as well as his right foot. Dr. Duffy found no paralysis. (Def.'s 56.1(a)(3) Statement ¶ 9). Dr. Duffy assessed Cogwell with hyperflexia in both extremities. Dr. Duffy did not order any new or different medications or treatment for Cogwell's condition. Dr. Elyea reviewed and approved Dr. Duffy's recommendation. (Id., ¶ 10).

On May 26, 1999, Cogwell was again examined by Dr. MacNab. Dr. MacNab noted that Cogwell suffered from left interior muscle shin splints with little improvement. He noticed pain with

3

palpation and edema to Cogwell's left lower extremity muscle group. Dr. MacNab provided arch support with a one-quarter-inch pad and provided an extra pad to Cogwell. Dr. MacNab prescribed Motrin and ordered a follow-up exam in one month. Dr. Elyea reviewed and approved Dr. MacNab's recommendation. (Def.'s 56.1(a)(3) Statement ¶ 11).

On July 14, 1999, Cogwell was seen by Dr. Smith for a lump on his neck. Cogwell was assessed with a benign tumor in the left thyroid area. Cogwell was instructed to follow-up with the doctor if the lump changed in size. No complaint about pain or swelling in Cogwell's lower-left extremity was noted during the exam. (Def.'s 56.1(a)(3) Statement ¶ 12).

On July 21, 1999, Cogwell was examined by Dr. MacNab for his follow-up exam. Dr. MacNab noted that the follow-up was being performed for Cogwell's complaint of lower extremity left interior muscle shin splints. Dr. MacNab noted that there was improvement in Cogwell's lower-left extremity. Dr. MacNab assessed Cogwell as needing to continue with shoe insole pads to increase the comfort and reduce the strain to the groups of muscles in Cogwell's lower-left extremity. No additional treatment or medication other than the insole pads and a follow-up in one-and-a-half months were recommended. (Def.'s 56.1(a)(3) Statement ¶ 13).

On August 1, 1999, Cogwell complained to a correctional medical technician ("CMT") of swelling in his lower-left leg. The CMT directed Cogwell to elevate his leg while sitting and to see the medical staff when needed. (Def.'s 56.1(a)(3) Statement ¶ 14). Approximately six weeks later, on September 10, 1999, Cogwell was again seen by Dr. MacNab for his follow-up exam. Dr. MacNab observed that Cogwell was able to slowly jog around a small yard three times. Dr. MacNab found that Cogwell's shin splints were resolving. He recommended a new pad for Cogwell's shoes, provided instruction on stretching exercises, and recommended a follow-up exam

4

in two to three months. Dr. MacNab's recommendations were reviewed and approved by Dr. Smith. (Id., ¶ 15).

Three months later, on December 15, 1999, Cogwell was seen by Dr. MacNab for his follow-up exam. Dr. MacNab noted that the anterior shin splints on Cogwell's left leg had little further resolution. However, Cogwell had decreased pain in his lower extremity. Dr. MacNab noted that Cogwell's shoes were too small. Dr. MacNab added a new pad to the insole of Cogwell's shoes and removed the old pad. Dr. MacNab recommended a follow-up exam in four months. No other medications or treatment were necessary. (Def.'s 56.1(a)(3) Statement ¶ 17).

On January 4, 2000, Cogwell reported to a CMT that his left ankle was swollen. The CMT noted that Cogwell claimed of chronic swelling with tenderness to the lower ankle. The CMT referred Cogwell to the physician's sick call. (Def.'s 56.1(a)(3) Statement ¶ 18). Later that same day, Cogwell was seen by Dr. Evaristo Aguinaldo for his left leg complaints. Cogwell complained of "on and off" swelling of his left leg for several years. He claimed that the swelling started to occur after an operation on his left leg. Dr. Aguinaldo observed that Cogwell was alert and not in distress. A surgical scar was noted in the middle half of Cogwell's left leg with no tenderness. However, slight swelling of the left ankle was noted. Dr. Aguinaldo assessed Cogwell with left leg edema and recommended that Cogwell not drink too much water. Cogwell was instructed to elevate his leg. Later that same day, Cogwell again complained of edema in his left foot. A nurse noted that Cogwell had seen the doctor in the morning and applied an ace bandage to Cogwell's left foot and ankle. (Id., ¶ 19).

On January 12, 2000, Cogwell was seen by Dr. Smith for complaints of lower extremity swelling. Dr. Smith observed minor pedal edema as a result of a previous pre-tibial surgery.

Dr. Smith prescribed Motrin for pain and instructed Cogwell to keep his foot elevated until the swelling resolved. (Def.'s 56.1(a)(3) Statement ¶ 20).

On January 17, 2000, Cogwell was assessed by Dr. Aguinaldo with complaints of pain and swelling in the left ankle and leg. Dr. Aguinaldo examined Cogwell's left ankle and noted a surgical scar on the left leg. There was slight swelling to the left ankle and no limitation in Cogwell's range of motion. Dr. Aguinaldo assessed Cogwell with left leg edema with an unknown cause. He prescribed Tylenol every six hours for ten days and instructed Cogwell to elevate his leg. (Def.'s 56.1(a)(3) Statement ¶ 21). Three months later, on April 11, 2000, a Physicians Admission Notes for Stateville infirmary indicated that Cogwell had full range of motion and no edema to the extremities. (Id., ¶ 22).

On April 14, 2000, Cogwell was seen by Dr. MacNab for his follow-up exam. Cogwell told Dr. MacNab that Cogwell had a two-year problem with swelling in his lower-left leg. Dr. MacNab assessed venous congestion in the lower extremity and indicated that he would review the chart and that Cogwell should return in two weeks. (Def.'s 56.1(a)(3) Statement ¶ 23). On May 3, 2000, Cogwell returned to Dr. MacNab for his follow-up exam. During the exam, Cogwell told Dr. MacNab that Cogwell "believed a doctor messed up his leg" and that Cogwell would be unable to continue treatment because Cogwell claimed it was not helping his condition. Dr. MacNab recommended a prescription of Motrin and instructed Cogwell to return for follow-up as needed. Dr. Smith reviewed and approved Dr. MacNab's recommendation. (Id., ¶ 24).

On May 5, 2000, Cogwell saw Dr. Andrew Tilden with a complaint of leg pain. Dr. Tilden prescribed Motrin and ordered that the Ace bandage wrap continue as previously ordered by the podiatrist. (Def.'s 56.1(a)(3) Statement ¶ 25). On May 15, 2000, Dr. Smith examined Cogwell and

observed no swelling of Cogwell's left ankle or foot. Cogwell's pedal and posterior tibial pulses were within normal limits, and there was only mild swelling on Cogwell's scar of the left pre-tibial surface. Cogwell had no acute injury. Dr. Smith prescribed Ibuprofen twice a day for thirty days, as needed. He also approved the continued application of the Ace bandage. (Id., ¶ 26).

On August 4, 2000, Cogwell next complained about leg pain. Cogwell requested that a nurse have a doctor write a prescription for Motrin due to the swelling of his feet. Cogwell told the nurse that the Motrin helped. The nurse noted that Cogwell had a history of edema due to an old injury. On this date, Cogwell's lower-left extremity pulses were good, and his color and temperature were acceptable. Cogwell was assessed with pain, and the nurse informed Cogwell that she would attempt to contact the doctor to prescribe medication. (Def.'s 56.1 (a)(3) Statement ¶ 27). On August 16, 2000, Cogwell saw a CMT with a complaint of swollen feet. Cogwell's vital signs were normal, and his feet were slightly swollen. The CMT noted that Cogwell's circulation was good, that there was no discoloration of Cogwell's toes, and that there was only minor discomfort. Cogwell was able to walk and move his toes. The CMT advised Cogwell to avoid salty foods and referred Cogwell to the physician's sick call. (Id., ¶28).

On August 18, 2000, Cogwell was seen by Dr. Aguinaldo. Cogwell complained that his left foot had been swollen for a couple of days and that he had no history of injury to his foot. Dr. Aguinaldo noted that Cogwell was alert and not in distress. There was no swelling or tenderness in Cogwell's left foot, and his pedal pulses were within normal limits. Dr. Aguinaldo assessed Cogwell with normal limits. Dr. Aguinaldo assessed Cogwell with a normal left foot and recommended observation and elevation of the foot. (Def.'s 56.1(a)(3) Statement ¶ 29).

Cogwell was not seen again for left lower-extremity pain until October 30, 2000, when he

was seen by a CMT with a complaint of swelling in his left ankle. Cogwell requested "tape" and was provided with Tylenol. (Def.'s 56.1(a)(3) Statement ¶ 30). On November 3, 2000, Cogwell was examined by Dr. Smith with a complaint of lower extremity and re-tibial edema. Dr. Smith found chronic lower-left extremity edema with no skin or vascular injury. Dr. Smith prescribed Motrin twice per day, as needed, for sixty days. (Id., ¶ 31).

On November 22, 2000, Cogwell was treated by Dr. Aguinaldo for a complaint regarding a knot in the left side of his groin and left foot swelling. Dr. Aguinaldo assessed slight left foot edema and instructed Cogwell to keep his leg elevated. (Def.'s 56.1(a)(3) Statement ¶ 32). On December 23, 2000, Dr. Kurrian, another physician at Stateville, completed an Admission Note for the infirmary assessing Cogwell's extremities as being within normal limits. (Id., ¶ 33).

Five months later, on April 5, 2001, Cogwell complained to a CMT that he had swelling in the area of his left foot for two days. The CMT found that Cogwell was ambulatory but had swelling on the instep area of his left foot. (Def.'s 56.1(a)(3) Statement ¶ 34). The next day, Cogwell was seen by Dr. Tilden, who charted that Cogwell had a history of an old fracture to the lower-left extremity with complaints of occasional swelling of the left foot. Dr. Tilden observed that there was full range of motion of Cogwell's left foot with no edema and no tenderness. He assessed Cogwell with an old trauma. Dr. Tilden referred Cogwell for a follow-up exam with the Podiatry Clinic, prescribed Advil twice a day for thirty days and a hot pack three times a day and ordered Cogwell to elevate his lower-left extremity. (Id., ¶ 35).

On May 25, 2001, Dr. Tilden saw Cogwell for his follow-up exam. Dr. Tilden observed that Cogwell's left foot was flat and that there was pain and tenderness while applying pressure. Cogwell's gait was within normal limits. Dr. Tilden advised Cogwell to follow-up at the Podiatry

Clinic, prescribed Advil, and advised Cogwell to return as needed. (Def.'s 56.1(a)(3) Statement ¶ 36). Cogwell next complained of problems with his lower-left extremity on June 13, 2001, when he was seen by a CMT with a complaint of swelling of his left foot. The CMT noted that Cogwell was ambulatory with some slight swelling in the area of his left foot. (Id., ¶ 37). The following day, Cogwell complained to a CMT about swelling in his left foot. The CMT noted that Cogwell's foot was slightly swollen with no discoloration. Cogwell's left foot was warm to the touch, and the pedal pulse was present. Cogwell was instructed to elevate his foot, alternate between cold and warm compresses, and use Tylenol every four to six hours, as needed. (Id., ¶ 38).

On June 20, 2001, Cogwell was examined by Dr. Aguinaldo. Cogwell complained of swelling in his left foot. Dr. Aguinaldo noted that Cogwell was walking without difficulty. Dr. Aguinaldo noted slight swelling in Cogwell's left foot but no pain on dorsiflexion and no pedal edema. Dr. Aguinaldo instructed Cogwell to elevate his left foot and return as needed. (Def.'s 56.1 (a)(3) Statement ¶ 39).

On July 4, 2001, Cogwell was examined by another physician at Stateville, who noted that there was full range of motion and no edema to Cogwell's extremities. (Def.'s 56.1(a)(3) Statement ¶ 40). On July 13, 2001, Cogwell was seen by a CMT after complaining of extremity problems. Cogwell stated that he wanted a renewal of Advil for occasional swelling in the area of his foot. The CMT assessed Cogwell with "self-reported" swelling of the foot and referred Cogwell to the doctor's sick call. (Id., ¶ 41). On July 16, 2001, Cogwell returned to the Podiatry Clinic and was admitted by Dr. MacNab with complaints of pain in the left foot and leg. Dr. MacNab assessed Cogwell with a decreased arch and Pes Valgo Planus/tendinitis of the left lower extremity. Dr. MacNab ordered additional X-rays and requested a follow-up exam in one-and-a-half weeks. The X-rays that were

taken that same day were negative for any abnormalities. (Id., ¶ 42). On July 30, 2001, Cogwell was seen by Dr. MacNab for his follow-up exam. Dr. MacNab noted that he had received the negative results of Cogwell's X-rays. Dr. MacNab added an arch pad to the insole of Cogwell's left shoe and recommended a one-month follow-up exam. (Id., ¶ 43).

In December 2001, Cogwell was transferred to the Menard Correctional Center. (Def.'s 56.1(a)(3) Statement ¶ 45). In February or March 2002, Cogwell was examined by a physician at Menard. The Menard physician prescribed Tylenol. (Id., ¶ 46).

During his stay at Stateville, Cogwell suffered from chronic shin splints caused by flat feet. The appropriate treatment for shin splints is elevation of the limb to decrease swelling, pain control, pressure wraps, and ice or heat to control pain and swelling. (Def.'s 56.1(a)(3) Statement ¶ 48). There is no curative treatment for shin splints. The only medical treatment available is to address the symptoms as they arise. Surgical intervention or any other type of clinical action was not indicated in Cogwell's case. The swelling of Cogwell's tibial area and foot was mild and could be treated conservatively. Various X-ray examinations, reviewed by independent radiologists, confirmed the lack of abnormalities in Cogwell's knee, ankle, and foot joints. (Id., ¶ 49).

Cogwell alleges that the Defendants violated his Eighth Amendment right against cruel and unusual punishment because they were deliberately indifferent to his serious medical condition.

The Eighth Amendment forbids "unnecessary and wanton infliction of pain," including deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove deliberate indifference, a plaintiff must show that he had an objectively serious medical need and that the defendants acted with a "sufficiently culpable state of mind," a subjective determination. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Here, the Defendants concede that

Cogwell suffered from an objectively serious medical need.

Deliberate indifference exists when the person knows of and disregards an excessive risk to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Liability attaches only if the person's conduct is intentional or criminally reckless; neither negligence nor gross negligence is sufficient. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). As to medical treatment, deliberate indifference may be inferred from a physician's treatment decision only if his or her actions represent a substantial departure from the accepted professional judgment, standard or practice. Differences in judgment as to the course of treatment between an inmate and medical personnel do not rise to deliberate indifference. *See Jones v. Natesha*, 233 F.3d 1022, 1027 (N.D. Ill. 2002) (*Jones*). The court examines the totality of the inmate's medical treatment when determining whether such care constitutes deliberate indifference to the inmate's serious medical needs. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (*Walker*).

The undisputed facts demonstrate that Cogwell received extensive care for his medical condition of shin splints. Cogwell alleges that the doctors were deliberately indifferent because they prescribed the same or similar treatment for the entire period of treatment. However, no medical testimony supports the proposition that the doctors' treatment was inadequate. While Cogwell speculates that a jury could find that the same continued treatment over a two-year time span constituted deliberate indifference, such speculation is insufficient to defeat summary judgment. *See Rand v. CF Industries, Inc.* 42 F.3d 1139, 1146 (7th Cir. 1994) (inferences and opinions must be grounded in more than speculations, hunches, or rumors). The undisputed facts show that Cogwell suffered from shin splints and that Cogwell received the appropriate treatment for his medical condition. The only medical evidence provided shows that the treatment Cogwell received was

adequate and not a departure from the accepted professional judgment, practice or standard. The Defendant-physicians' affidavits, in which they aver that they offered acceptable and appropriate treatment for Cogwell's shin splints, are unrebutted. *See Walker*, 233 F.3d at 501 (summary judgment was properly granted because no reasonable jury could conclude based on the inmate's personal testimony, without any medical evidence, that his medical treatment was inadequate).

Furthermore, even if Cogwell could show that a different physician would have treated his shin splints in a different manner, such evidence would not defeat summary judgment because mere differences in opinion among medical personnel regarding a patient's appropriate treatment do not rise to deliberate indifference. *See Snipes v. Detella*, 95 F.3d 586, 591 (7th Cir. 1996) (removal of toe nail without anesthetic did not constitute deliberate indifference); *Jones*, 233 F. Supp. 2d at 1027 ("whether an alternative treatment plan would have been more beneficial or acceptable is pure speculation and insufficient to prove deliberate indifference").

Based on the above, there is no genuine issue of material fact whether the Defendants acted with deliberate indifference; and the Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is granted.

Dated: December 17, 2003

JOHN W. DARRAH
United States District Judge